A95A2049. DENT v. THE STATE.
(469 SE2d 311)

McMURRAY, Presiding Judge.

Defendant Willie Emerson Dent, also known as Jim Brown Boohice, was charged in an indictment with two counts of aggravated child molestation and one count of child molestation for acts committed against the same victim, the six-year-old daughter of defendant's common law wife. The victim testified that defendant twice made her commit acts of oral sodomy on him and that he also penetrated her vulva with his lubricated finger. During the second incident of aggravated child molestation, "C. B.," the victim's 12-year-old aunt "saw [defendant] and [the victim] in the bathroom." The jury found him guilty on all three counts. Defendant's amended motion for new trial was denied and this appeal followed. *Held*:

1. Defendant's first three enumerations raise the general grounds.

There is no requirement that the testimony of the victim of child molestation or aggravated child molestation be corroborated. *Toles v. State*, 202 Ga. App. 815 (1) (415 SE2d 531); *Saunders v. State*, 195 Ga. App. 810 (1) (395 SE2d 53); *Fitzgerald v. State*, 193 Ga. App. 76 (2) (386 SE2d 914). Nevertheless, the testimony of the victim in the case sub judice was corroborated by evidence of her outcry to her mother and to her aunt, "C. B." *Stander v. State*, 193 Ga. App. 212 (1) (387 SE2d 422). Although there was evidence that the victim subsequently told her mother the allegations against defendant were not true, this was contrary to the victim's direct evidence from the stand and a question of credibility was presented for the jury to resolve. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of child molestation and aggravated child molestation as alleged in the indictment. *Patterson v. State*, 212 Ga. App. 257 (1) (441 SE2d 414).

2. Defendant further enumerates the denial of his motion for new trial on the ground that the jury was "contaminated" because one juror read a "false and highly prejudicial newspaper article . . . the morning before they were to begin deliberations."

The transcript shows that, after deliberations had begun but before the jury returned its verdict, defense counsel brought to the court's attention a newspaper article from the "Metro" section, page 13A, of the Augusta Chronicle for January 14, 1993, captioned "Day before trial, man pleads guilty to child molesting." This article referenced a completely different defendant in an entirely separate case.

However, the article continued to another page under the caption "Evans man in court on child molestation charge," and closed with the following reference to defendant's trial: "The girl's mother told deputies that [defendant], who was an acquaintance of hers, had oral sex with her daughter on at least one occasion and possibly 'several times before,' Captain Wilhelm [of the Richmond County Sheriff's Department] said." After deliberations were concluded but before the verdict was published, the trial court inquired of the jury "if any of you had anything to do with reading the newspaper this morning, and if you did, did it affect . . . in any way the decision you might have made in this case?" Only one juror responded: "I read it," but he denied it affected his decision, and denied communicating to other jurors about the article. The jury collectively disavowed "any discussion . . ." about the article during deliberations. Defendant's renewed motion for mistrial was denied.

"Newspaper accounts of the trial should not be read by the jury during the progress of the trial. Likewise, radio and television news accounts of the trial should be avoided." *Maltbie v. State*, 139 Ga. App. 342 (1), 344 (228 SE2d 368). "When a juror enters upon the trial of a criminal case, the law contemplates his withdrawal from the public and makes no provision for addresses to him from outside sources, for his entertainment or otherwise, which are calculated, directly or indirectly, to excite any passions or emotions with respect to the matter upon which he is to sit in judgment. Perfect impartiality in the juror is the object of the law. Anything not legitimately arising out of the trial of the case, which tends to destroy the impartiality of the juror, should be discountenanced. . . . Verdicts should be the result of calm deliberation, founded upon the law and evidence." *Styles v. State*, 129 Ga. 425, 429 (59 SE 249). In the case sub judice, the record affirmatively reflects that this verdict was the result of the jury's calm deliberation based upon the law and the evidence, and was not the impermissible result of any unauthorized exposure to news media accounts. "We find that the measures taken by the trial court to determine no prejudice inured to [defendant] as a result of exposure to media accounts by any members of the jury were adequate in this case. There is no basis for setting aside the verdict and granting a new trial. *Watson v. State*, 162 Ga. App. 170 (290 SE2d 500) (1982)." *Langston v. State*, 162 Ga. App. 795, 796 (2), 797 (293 SE2d 54).

3. In his fifth enumeration, defendant contends the trial court erroneously prohibited him from questioning the victim's mother, Teresa Brown, regarding purported admissions made to her by the victim's grandmother, Ruby Brown, "concerning Ruby Brown's previous false accusations of child molestation and coercion of her son . . ." to testify falsely. This contention is not supported by the record.

Defendant called the victim's mother for direct examination.

With respect to what Ruby Brown might have told Teresa Brown, the transcript shows the following transpired:

"[DEFENSE COUNSEL]: Are you [Teresa Brown] aware that your mother, she also told the police that her own son, Phillip, had been sexually abused by her [then-husband,] James Lattimore? [TERESA BROWN]: Yes. [DEFENSE COUNSEL]: Do you know anything about that incident? [TERESA BROWN]: She came and told me about it. [DEFENSE COUNSEL]: What did she tell you about it? [TERESA BROWN]: She told me that . . . [STATE'S ATTORNEY]: (Interposing) Your Honor, I would object to anything that another witness told her. That's hearsay. . . . THE COURT: Let's direct her attention away from hearsay testimony, [Defense Counsel]. [DEFENSE COUNSEL]: Our position would be that it would be an admission of a party. THE COURT: Well, hearsay testimony doesn't have any probative value . . . in this instance." Whereupon defense counsel moved on to other matters, eliciting the confirmation of the mother that the victim "told you that none of these charges are true[.]"

It is clear from this recitation from the transcript that defendant made no proffer of the substance of any "admission" purportedly admissible against this non-party witness. " 'Where the error alleged is that certain evidence has been wrongfully excluded, the rule is well settled that there must have been a proffer or offer of a definite sort that both courts can know whether the witnesses really exist and that the evidence really exists. (Cit.) The record in the instant case does not show that[, after the trial court sustained the State's hearsay objection,] such [witness was] proffered, [but that] when proffered the court refused to permit the [witness] to testify, or if proffered what questions were asked or what answers were expected from the [witness]. In the absence of this information, the assignment of error is so incomplete as to preclude its consideration by this court.' *Byrd v. State*, 78 Ga. App. 824, 831-832 (3) (52 SE2d 330) (1949). See also *Robinson v. State*, 86 Ga. App. 375, 379 (3) (71 SE2d 677) (1952)." *Thompson v. State*, 187 Ga. App. 152, 153 (369 SE2d 523).

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED FEBRUARY 9, 1996.

*Jeffrey S. Bowman*, for appellant.
*Daniel J. Craig*, District Attorney, *Charles R. Sheppard*, Assistant District Attorney, for appellee.