## 61711. PATTERSON v. THE STATE.

Birdsong, Judge.
Debbie Patterson was charged with and convicted of burglary, theft by taking, and theft by receiving stolen property. She was sentenced to serve three consecutive five-year sentences. Patterson brings this appeal enumerating 23 asserted errors. *Held:*

The facts in evidence show that Ms. Patterson was "dating" one John Lee, and had been dating Lee for a "couple" of years. Lee owned a white van which had on the back door a rather large decal depicting a motorcycle rider. During the summer months of 1980, a white van with a motorcycle decal on the back door had been seen in numerous locations along back roads and roads around Lake Lanier and Gainesville. This or a similar van was seen on several occasions near areas where thefts had occurred or where houses had been burglarized. The transcript is not clear, however, as to whether the van was seen near the area of such a crime at the same time or very close to the time of the occurrence of the theft or burglary. On one occasion, the van was seen parked behind the house of a burglary victim, though once again the transcript does not show how long afterwards the burglary took place. Two neighbors approached the van and found a man and woman in the van. They (the occupants) stated that they were "parked," without further explanation. On another occasion, the van pulled into a driveway. When a neighbor inquired as to the business of the occupants, the answer was given that they were looking for a place to rent.

There was further evidence that Lee's grandparents lived on a cul-de-sac near Lake Lanier. Neighbors on either side of the grandfather's home suffered thefts from their boats and boathouses. Part of the stolen property subsequently was found behind an out-building on one of the neighbor's property. In early October, 1980, Ms. Patterson, Lee and his brother, Mark, all spent the night at Lee's grandparents' home. Ms. Patterson apparently was driven there by John Lee. John Lee was arrested for an unexplained reason and was not present at his grandparents' home on the morning of October 3, 1980. Testimony showed that Mark Lee (John's brother) intended to take Debbie to her home in Gainesville. He got up late and had to be at work at 8:00 a.m., thus he left Debbie asleep. When Debbie awoke, she had to return a load of clothes that she had freshly laundered at Lee's grandparents' home but had no way to reach her home in Gainesville, some 20 miles away. Contrary to John's instructions, Debbie "hot wired" the white van (because the switch was broken and inoperative) and started to drive back toward Gainesville. She testified that though John had told her not to "hot wire" the car because it might start a fire, he had shown her how to do this and she had driven the car three or four times before during the past couple of years. As Debbie was driving to see a female friend on the way to Gainesville, a police officer observed the white van with the distinctive motorcycle decal on the back. Having received reports that such a van had been seen in the area of several recent thefts and burglaries, the officer fell in behind. Debbie pulled off into a boat

dock area where one of her friends worked or lived. As she did, the police officer pulled alongside. Debbie informed the officer that the van belonged to John Lee. He asked her about several burglaries, but when Debbie expressed embarrassment at being questioned in the presence of her friends, she consented to go with the officer to the police station. Once at the station, the officers informed Ms. Patterson of her Miranda rights. She was very cooperative and answered all their questions. When she was asked if she would consent to a search of the car, she responded that she could not consent on behalf of John Lee (the owner), but insofar as she was concerned, she had no objection. Patterson then signed a consent form. A search of the car disclosed numerous items of stolen property, some taken from burgled premises and some taken from boats and boathouses. Some of the property stolen in one theft was found both in the car and behind the out buildings on the grandparents' neighbor's property. During her interrogation, Debbie stated that she had seen much and sundry personal property in John Lee's van over the past months. She testified that she understood that he "traded around." She also admitted that because of the variety and frequency of "swapping" she wondered as to the origin but stated that John had always been honest with her and she did not question his method of obtaining the property.

As can be seen from the summary of pertinent evidence, the state's case rests exclusively on circumstantial evidence. Moreover, the state obviously relied on several presumptions and inferences. Thus, the state argues that Debbie's "possession" of recently stolen property gives rise to the presumption or inference that she was one of the burglars or thieves. The state did not rely on a theory of aiding and abetting or of conspiracy, nor did the trial court give a charge on those principles. Thus, the state sought to prove by recent "possession" of stolen property that Debbie was a participant. The state likewise relies on the inference that Debbie was in exclusive possession and operation of the van, and that therefore, its contents can be inferred to be her property. The state also argues that because Debbie "lived" in the grandfather's house, and some of the recently stolen property was found both in the van and behind the house of a neighbor, it could be presumed that she stole both what was in the van and what was behind the neighbor's house (in fact, the unrebutted testimony showed that Debbie had spent the night in the grandparents' home only three or four times, whereas John Lee had lived in that house since he was 16 years of age, obviously a period of several years). Furthermore, the state argues that as operator Debbie "possessed" what was in the van and exercised dominion over that property and because she at least questioned whether John Lee came

into possession of the property honestly, the evidence supports a conviction of theft by knowingly receiving stolen property.

We do not so readily accept the validity of these several presumptions and inferences. The evidence shows that Debbie was at the elder Lee's home as a guest. She apparently came with the Lee brothers for the ostensible purpose of doing laundry as that was the announced purpose both of herself and of Mark Lee. She apparently came with John in the van. Although it is not clear when John was arrested and taken to jail, the plan was for Mark to take her home on the morning of October 3, with her laundry. When Mark left her, Debbie as a last resort turned to the use of the van. There is no evidence that she regularly used the van except when as a passenger with John Lee. The evidence is unrebutted that she had used the van only three of four times alone during the past months. Thus, we conclude that even though the evidence shows that when stopped, Debbie Patterson was the sole occupant of the van and its operator, that the van was owned by and used by John Lee routinely and had been so used very recently.

" 'The equal access' rule [*Davis v. State,* 146 Ga. App. 629 (247 SE2d 210)] and the cardinal principle that mere presence at the scene of a crime is not sufficient to support a conviction (*Denham v. State,* 144 Ga. App. 373, 374 (241 SE2d 295)) . . . together preclude any inference of actual or constructive possession of contraband being drawn solely from the fact that one is in immediate and exclusive control of an automobile, when there is any evidence of equal access. We are dealing here with the class of cases involving criminal conduct which is determined, always to some degree and often solely, by the fact of the accused's possession and control of a particular type of premises, the automobile — a highly mobile, transferable premises which, by its nature, may easily be subject to the possession and control of many persons. Consequently, where an accused presents any competent evidence that others have had equal access to the vehicle where contraband material is found, it cannot be inferred as a matter of fact, giving rise to a presumption of law, that based solely upon . . . operation . . . she was in actual or constructive possession of the contraband." *Farmer v. State,* 152 Ga. App. 792, 796 (264 SE2d 235). Thus the burden remained upon the state to show beyond reasonable doubt that Debbie was in exclusive possession of the stolen property, to the exclusion of every other reasonable hypotheses and without the benefit of any presumption of possession. *Farmer v. State,* supra, p. 796.

In the absence of the presumption of possession, the state's case suffers the fate of the proverbial house of cards. The inference that could flow from appellant's being seen in the vicinity of the burglaries

and thefts was not tied into a convincing time frame. There is no showing that the van was seen at the scene of a crime except vaguely during "the past two and a half months." Debbie's explanation of the van's being in the area was that she and John were looking for a house for her to rent and on other occasions they were enjoying the lake, driving to differing locations. No inference legitimately could be drawn from her "living" in the house adjacent to where some of the stolen goods were found inasmuch as the evidence shows that she was only a guest and lived 20 miles away. Though she had expressed some concern about the origin of the goods in the car, she testified, without rebuttal, that John had never lied to her, that he was trading the property, and she did not further question it. She denied knowing that the property was stolen and accounted for its presence in the van as being property John "traded around." At no time does the state show by competent evidence that Debbie exercised or intended to exercise personal dominion over any of the property in the van. Thus there is no competent evidence that she "received" the property knowing it to be stolen. If there is no evidence that she "possessed" the property when the van was stopped, there can be no evidence that she "received" that property intending to deprive the owner of the use and benefit of the property. At best, such evidence shows her mere presence at a place where stolen property was located. Where the evidence shows at best mere physical presence in a car which also contains stolen property, the state has not shown any possession of or receiving such property with the requisite intent to deprive the owner of the benefit and use thereof. As indicated hereinabove, mere presence where stolen property is located is not sufficient to support a conviction. *Denham v. State,* supra.

Moreover, the rule as to the sufficiency of circumstantial evidence to support a conviction is that the evidence exclude every reasonable hypothesis except the guilt of the accused. *Eason v. State,* 217 Ga. 831, 840 (125 SE2d 488); *Jerdine v. State,* 137 Ga. App. 811, 812 (224 SE2d 803). While we recognize that if there is question of the sufficiency of the circumstantial evidence to support guilt, this is a matter best left to a jury (*Townsend v. State,* 115 Ga. App. 529, 531 (154 SE2d 788)), this rule does not apply where the verdict of guilty is unsupportable as a matter of law. *Harris v. State,* 236 Ga. 242, 245 (223 SE2d 643). In this case the only evidence connecting Ms. Patterson to the burglary and stolen property is that she was seen in a car that was observed to be driving in an area where burglaries and thefts took place and subsequently was found operating a van which she did not own nor frequently operate but which contained stolen property. As previously indicated, the state had the burden of showing Ms. Patterson's connection to the stolen property

independently of the "presumption of possession of recently stolen property." The state has presented no such independent evidence. Opposed to the nonapplicable presumption, Ms. Patterson offered the unrebutted and reasonable explanations that the van was operated in the area and on roads on which burglaries occurred while gaining access to the beaches of Lake Lanier; or as lovers parked in secluded places; and that she believed the property in the van was John Lee's which he was using to "trade around." While neither the jury nor this court is required to accept these explanations, in the absence of any other valid explanation, we cannot ignore the only explanation offered. See *Allen Kane's Major Dodge v. Barnes,* 243 Ga. 776, 779 (257 SE2d 186). We conclude that there is no circumstantial evidence of guilt on which to base a conviction beyond a reasonable doubt.

In view of our discussion and conclusions hereinabove set forth, it is unnecessary individually to discuss the 23 enumerations of error raised by appellant. Suffice it to say that we find it was error for the trial court to fail to grant a motion for a directed verdict as to the burglary count and as to the theft by taking count (Counts 1 and 2). We also find error in the failure of the trial court to charge fully on the law of circumstantial evidence, adapted to the facts of this case. While normally a failure to charge the jury correctly on a particular principle would require a reversal with a view toward new trial, where, as here, there is no evidence to sustain the conviction even in face of a correct charge, we will in the interest of judicial economy reverse all three counts. See *Barnes v. State,* 244 Ga. 302 (1) (260 SE2d 40). Accordingly, the verdict and judgment of the trial court is reversed as to all three counts.

*Judgment reversed. Shulman, P. J., and Sognier, J., concur.*

Decided June 29, 1981 —
Rehearing denied July 15, 1981 —

*John N. Crudup,* for appellant.
*Rafe Banks III, District Attorney, Wallace W. Rogers, Jr., Assistant District Attorney,* for appellee.