75720. WATTS v. THE STATE.
(366 SE2d 849)

CARLEY, Judge.

In a bench trial, appellant was found guilty of vehicular homicide in the second degree. Appellant appeals from the judgment of conviction and sentence entered on the trial court's finding of guilt.

1. Appellant enumerates the general grounds.

"It is well established that evidence must be viewed in the light most favorable to the verdict. [Cits.] Applying the test set out in *Jackson v. Virginia*, [443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)], the reviewing court must consider whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Rachel v. State*, 247 Ga. 130, 132 (274 SE2d 475) (1981). "On appeal from a finding of guilty, the presumption of innocence no longer avails, for the fact [finder has] adversely adjudicated the issue of guilt to the appellant's contentions after having considered the quantum and quality of the evidence. As an appellate court, we seek

to determine only if there is evidence of the requisite degree of certainty to justify and support that determination. Our review is limited to a consideration of the evidence with a view toward approving the . . . findings, considering the evidence adversely to the appellant, and approving that verdict if there is evidence sufficient to convince a rational fact finder beyond reasonable doubt. [Cit.] Considering the sufficiency only and not the weight of the evidence, we are convinced that the [adjudication of guilt] is supported by competent evidence beyond reasonable doubt. [Cit.]" *Harris v. State*, 166 Ga. App. 689 (305 SE2d 428) (1983). "We . . . , do not require certainty *or even proof that is persuasive to us.* All we require is evidence upon which a rational [fact finder] could reasonably find the material elements of the crime beyond a reasonable doubt. [Cits.] We have no difficulty in concluding that this has been satisfied here." (Emphasis supplied.) *Harden v. State*, 164 Ga. App. 59, 60 (296 SE2d 372) (1982).

Based upon the review of the transcript it is clear that "[t]he evidence was sufficient for the trial court, as trier of fact, to find the defendant guilty of the offense charged beyond a reasonable doubt. [Cit.]" *Ricks v. State*, 184 Ga. App. 428, 429 (361 SE2d 829) (1987). Accordingly, the general grounds are without merit.

2. We have considered appellant's remaining enumerations of error and find them to be without merit.

*Judgment affirmed. Birdsong, C. J., Deen, P. J., McMurray, P. J., and Pope, J., concur. Banke, P. J., Sognier, Benham and Beasley, JJ., dissent.*

BANKE, Presiding Judge, dissenting.

The defendant in this case was convicted of vehicular homicide in the second degree based on an accusation charging that he had caused the death of another person by what is commonly referred to as "following too close." More specifically, he was convicted of causing the death of another person, without intending to do so, by violating OCGA § 40-6-49, which provides, in pertinent part, as follows: "(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

The accident occurred at approximately 6:10 p.m. on November 8, 1986. Although no evidence was introduced concerning the road conditions, the traffic citation indicates that the weather was "clear" and the road "dry." The appellant was driving a 1977 Oldsmobile, and the victim was driving a pickup truck. The appellant testified that he had been stopped behind the truck at a traffic light shortly prior to the accident and that he had then followed the truck as it turned right and proceeded down a four-lane highway, driving at an

estimated speed of "around 32 miles per hour" and at an estimated distance from the truck of about three car lengths. It is apparent from other evidence that the collision occurred as the decedent was attempting to make a right turn into a commercial driveway. The appellant described the collision as follows: "[H]e stopped in front of me suddenly. I pulled to the left as hard as I could to try to avoid hitting him, but I caught the right front of my car and the left rear of his truck. The truck went into a spin sideways and then flipped." Tragically, when the truck flipped over, the decedent's head was crushed between the cab and the pavement.

The state's evidence, consisting in its entirety of some photographs of the accident scene and the testimony of two deputy sheriffs who had investigated the collision, was totally consistent with the appellant's testimony. One of the deputies in fact corroborated the appellant's testimony concerning the speed at which he had been driving immediately prior to the accident, stating that he had conducted an experiment by accelerating his patrol car as fast as possible from the intersection where the appellant and decedent had been stopped to the point of impact and that he "didn't get past 35 miles per hour to the point of impact." A breathalyzer test administered to the appellant subsequent to the accident revealed no trace of alcohol in his bloodstream.

The trial court explained as follows his reasons for finding the appellant guilty of involuntary manslaughter: "Under the evidence in this case there are no skid marks by the leading vehicle, which was driven by [the decedent], and no skid marks by [the appellant]. So, the court cannot assume, or even think, that [the decedent] came to a sudden stop. It could not have happened that way, there were no skid marks. . . . Then there is evidence — and giving [the appellant] the benefit of everything — he traveled 150 . . . to 250 feet after impact. And if you look at these pictures, it was a right severe impact. And the court is of the opinion that under the evidence what happened is that he was just right upon the truck, and when [the decedent] decided to turn and slowed down, [the appellant] couldn't stop and he hit him. By his own testimony, he was able to see him, and if he had been a safe distance behind the vehicle — he would sure have had to have been more than three car lengths behind him, because at 30 miles an hour you travel 44 feet per second, and . . . it would take that long to get his foot on the brake before he could ever start braking the vehicle."

None of these reasons bears up under scrutiny. With respect to the issue of skid marks, there was in fact no evidence to indicate whether or not any skid marks were left at the scene. The only witness questioned on the issue stated that he had not observed the roadway for skid marks and did not know if there were any. Further-

more, it is not at all evident why the absence of skid marks would be inconsistent with the appellant's account of the accident. Similarly, with respect to the severity of the impact, none of the evidence on this issue was shown to be inconsistent in any way with the appellant's testimony that he had been travelling at a speed of 32 miles per hour prior to the impact. Finally, there is no evidentiary support for the trial court's conclusion that a distance of three car lengths is less than a safe and prudent distance at which to follow another vehicle doing 30 miles per hour. The 1987 "Georgia Drivers Manual" published and distributed by the Department of Public Safety in fact recommends precisely such an interval, specifying, under the heading "Following Too Closely" at page 42, that "[o]ne car length for each 10 miles per hour is often used as a guide on dry pavement when visibility is good."

The trial judge concluded, in effect, that the fact that the appellant had been unable to avoid the collision proved he had been following too closely. I cannot agree. The evidence in this case is at least equally consistent, if not more consistent, with the hypothesis that the accident occurred due to the appellant's failure to keep his attention properly focused in front of him. (Both deputies testified that the truck's right blinker had been flashing upon their arrival at the accident scene, while the appellant testified that he had "never seen no blinker lights.") Of course, the evidence is also consistent with the hypothesis that the decedent decelerated suddenly without advance warning, leaving the appellant with no reasonable opportunity to avoid the collision even in the exercise of due care.

"While we recognize that if there is [a] question of the sufficiency of the circumstantial evidence to support guilt, this is a matter best left to [the factfinder] (cit.), this rule does not apply where the verdict of guilty is unsupportable as a matter of law." *Patterson v. State*, 159 Ga. App. 290, 294 (283 SE2d 294) (1981). Finding no evidence in this case which would support a finding that the appellant was in violation of OCGA § 40-6-49, I would reverse his vehicular homicide conviction.

I am authorized to state that Judge Sognier, Judge Benham and Judge Beasley join in this dissent.

BEASLEY, Judge, dissenting.

I concur in the dissent and submit the following factors in further support of it.

It is true that there was some evidence that decedent's right turn signal was on after the collision occurred, permitting the inference that it was on when the collision occurred, but no evidence as to how soon before or at what distance in advance of decedent's turn it was activated. It could not have been great, because decedent had just

turned onto this road from another at which he had stopped for a red light. The most precise measurement in the record is the investigating officer's testimony that the distance between the turn from the other road to the point of impact was about equal to that between the courtroom and the tax assessor's office across the street. Defendant testified that there was no advance indication that decedent was going to stop or make the turn, and that he himself was watching the road and traffic while driving.

Although a witness gave a statement to the police, the witness was not produced by the State. Nor was any other eyewitness, although the time of day, the place, the number of persons in the photos, and the testimony about traffic indicates that there were some. Neither did the State produce the videotape made by the investigating officers of the scene. There was thus some absent evidence in the State's case.

The court's findings were undeniably in part based on no evidence and in part on unsupported inference or deduction from the incomplete evidence produced by the State. A case resting upon inferences made from inferences is insufficient in proof where the inference is too remote. *Spruell v. Ga. Automatic Gas &c. Co.*, 84 Ga. App. 657, 663 (67 SE2d 178) (1951); *Georgia R. &c. Co. v. Harris*, 1 Ga. App. 714 (57 SE 1076) (1907).

Thus I agree that the evidence which was offered did not support the judgment that, beyond a reasonable doubt, defendant was guilty of following too closely and that this activity caused a homicide. I would not go so far as to say that the evidence pointed to failure of defendant to keep his attention properly focused in front of him.

DECIDED MARCH 14, 1988.

*James F. Findlay*, for appellant.
*Sam B. Sibley, Jr., District Attorney*, for appellee.