## A00A2418. GUNSBY v. THE STATE.
(545 SE2d 56)

MILLER, Judge.

Lavorious Kenvion Gunsby appeals his convictions for two armed robbery counts arising out of the robbing of a Spectrum convenience store and for an additional armed robbery and a robbery count arising out of the robbing of a Kentucky Fried Chicken ("KFC") store. He was acquitted on a fourth armed robbery count concerning another convenience store. He enumerates four errors: (1) the evidence was insufficient; (2) the court erred in denying his motion to suppress evidence obtained under an invalid search warrant; (3) the court erred in denying his motion to sever the Spectrum robbery charges from the KFC robbery charges; and (4) he received ineffective assistance of counsel. We discern no error and affirm.

1. The issue when reviewing a conviction for sufficiency of the evidence is whether, based on the evidence presented, a rational finder of fact could have found the accused guilty of the charged offenses beyond a reasonable doubt.[1] Leaving the resolution of conflicting or contradictory testimony and the credibility of the witnesses to the jury,[2] we construe the evidence in favor of the jury's verdicts.[3] In this regard, even though a witness may recant on the stand, his prior inconsistent statements constitute substantive evidence on which the jury may rely.[4]

*Spectrum Robbery.* So construed, the evidence showed that at 1:30 a.m. on Sunday, February 15, 1998, a young male of defendant's race, wearing a hooded mask and carrying a 30-30 rifle, entered a Spectrum convenience store in Troup County and demanded that the money from the cash register be placed in a bag. The robber then turned the rifle on a customer standing nearby and demanded money from him. The mask was homemade with the eye holes cut down to the bottom of the gunman's nose. The cashier, who thought the gunman looked familiar, described him as five feet five inches in height, about 130-140 pounds, with the voice of a young boy and favoring a man who turned out to be Gunsby's uncle.

When Gunsby came into the store the following Wednesday, the cashier immediately recognized him as the gunman and called police. At trial the cashier positively identified sixteen-year-old Gunsby (who weighed 132 pounds and was five feet six inches in height) as the gunman and positively identified the 30-30 rifle found at

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] *Arrington v. State*, 244 Ga. App. 529, 531 (536 SE2d 212) (2000).

[3] *Drake v. State*, 238 Ga. App. 584, 586 (1) (519 SE2d 692) (1999); accord *Watts v. State*, 186 Ga. App. 358 (1) (366 SE2d 849) (1988) (whole court) (presumption of innocence no longer applies once jury has considered the evidence and determined the accused's guilt).

[4] *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982).

Gunsby's residence as the robbery weapon. Gunsby admitted to an acquaintance that he had committed the Spectrum robbery.

*KFC Robbery.* On the day following the Spectrum robbery, the KFC store across the street was robbed by a young man of defendant's race, wearing a homemade mask and carrying a 30-30 rifle, who demanded that the money from the cash register be placed in a bag and who also stole an employee's wallet lying nearby. The witnesses described the gunman as approximately five feet five inches in height and as wearing a black leather jacket. The gunman did not demand money from another bystander, who turned out to be a friend of Gunsby. Gunsby later admitted to an acquaintance that he robbed the KFC store also and, as evidence, showed the acquaintance a large amount of cash that he received from both robberies.

A search of Gunsby's residence produced the 30-30 rifle and a black leather jacket similar to what was worn by the gunman at the KFC robbery. When found, the rifle had wet and dry mud on it as well as grass blades, even though its owner (Gunsby's father) had not used the gun for years. It was raining on the night of the KFC robbery. Evidence also showed that Gunsby owned a skullcap cut with homemade holes.

The evidence sufficed to sustain the verdicts for three counts of armed robbery[5] and one count of robbery.[6]

2. Gunsby complains that the search warrant for his residence was invalid, arguing that the underlying affidavit omitted material information, deliberately misrepresented underlying facts, and did not provide information from which the magistrate could determine the reliability of the informants. He contends that the court should have granted his motion to suppress the evidence discovered under the search warrant.

In reviewing a trial court's holding on a motion to suppress, we construe the evidence most favorably to uphold the trial court's judgment and do not disturb its findings if there is any evidence to support them.[7] Our task on appeal is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed" based on the totality of the circumstances.[8] If the underlying affidavit relies on informants, the informants' veracity or reliability and their basis of knowledge are relevant considerations to deter-

---

[5] OCGA § 16-8-41 (a) (armed robbery); see *Sims v. State*, 242 Ga. App. 460, 461 (1) (530 SE2d 212) (2000).

[6] OCGA § 16-8-40 (a) (3) (robbery by sudden snatching); see *Burns v. State*, 245 Ga. App. 332 (537 SE2d 768) (2000).

[7] *Sosebee v. State*, 227 Ga. App. 21, 22 (488 SE2d 102) (1997); see generally *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[8] (Citation and punctuation omitted.) *Sosebee*, supra, 227 Ga. App. at 22.

mine if probable cause existed for the issuance of the warrant.[9] And corroboration of the informants' information may provide a substantial basis for finding probable cause, despite deficiencies in the informants' veracity, reliability, or basis of knowledge.[10]

Describing the Spectrum robbery, the police officer's underlying affidavit set forth that the Spectrum cashier had told the officer within days after the robbery that the cashier recognized and identified Gunsby by name as the gunman who robbed the store. After interviewing the KFC cashier, who described the gunman as wearing a black leather jacket, the police officer also interviewed an informant named Benjamin Jones who advised that Gunsby admitted to robbing the KFC store and to receiving just over $900 in currency. This amount approximated the amount stolen, which information had not been released to the public.

Finally, the affiant officer stated that another officer told him a reliable source advised that Gunsby had committed the KFC robbery. No other information on this informant was provided. The affiant confirmed Gunsby's address and requested a search warrant to search for the weapon and for the black leather jacket.

Since the cashiers were victims of the robberies, there was no requirement that their reliability be further corroborated in order to show probable cause.[11] Thus, the victim's identification of Gunsby by name was sufficient to establish probable cause that he committed the Spectrum robbery.[12] This authorized the rational inference that implements or the fruits of the crime would be found at the 16-year-old's residence.[13] Jones's statement about Gunsby admitting to the KFC robbery was corroborated by Jones's identification of $900 as the stolen amount, which information had not been released to the public. This corroboration of Jones's information provided a substantial basis for finding probable cause, despite the alleged deficiencies in Jones's veracity, reliability, or basis of knowledge,[14] even if that corroboration was marginal.[15] This is so, particularly in light of the admonition that we should resolve doubtful or marginal cases in

[9] *Pailette v. State*, 232 Ga. App. 274, 277 (501 SE2d 603) (1998).

[10] *Butler v. State*, 192 Ga. App. 710, 712 (1) (386 SE2d 371) (1989).

[11] *Miller v. State*, 219 Ga. App. 213, 216 (2) (464 SE2d 621) (1995); accord *Devier v. State*, 247 Ga. 635, 638 (5) (277 SE2d 729) (1981) (hearsay declarant shows reliability by stating he or she is a law enforcement officer, the victim of a crime, or a law-abiding and trustworthy concerned citizen, or even a declarant against penal interest).

[12] See, e.g., *Wimberly v. State*, 233 Ga. 386, 387 (4) (211 SE2d 281) (1974) (warrantless arrest for rape and armed robbery was not illegal but based upon probable cause, where victim recognized defendant and informed police).

[13] *Williams v. State*, 251 Ga. 749, 795 (8) (b) (ii) (312 SE2d 40) (1983); accord *Huntley v. State*, 244 Ga. App. 212, 213 (1) (535 SE2d 270) (2000).

[14] *Butler*, supra, 192 Ga. App. at 712 (1).

[15] *Mincey v. State*, 180 Ga. App. 898, 900 (1) (350 SE2d 852) (1986).

favor of finding the warrant valid.[16] The inclusion of the statement to the other police officer from the unnamed and uncorroborated informant was surplusage and unnecessary for finding probable cause.

Citing *Redding v. State*,[17] Gunsby claims that the affidavit omitted material information and deliberately misrepresented facts, and that the affidavit should be considered with the material facts added and the misrepresentations deleted. But neither this argument nor its underlying evidence was raised or presented to the court at the motion to suppress hearing, even though the hearing reflected that Gunsby received this evidence in discovery prior to the hearing. Nor did Gunsby ask the court during trial to reconsider its ruling or renew his motion to assert these additional grounds. Accordingly, the court did not abuse its discretion in declining to reconsider the ruling on these grounds at the motion for new trial hearing.[18]

3. Gunsby contends that the court erred in failing to sever the Spectrum robbery charges from the KFC robbery charges. "A court has wide discretion in severance motions."[19] A trial court properly denies a motion to sever when

> the crimes alleged were part of a continuous transaction or series of similar transactions conducted over a relatively short time, and from the nature of the entire transaction, it would be difficult to present to a jury evidence of one of the crimes without also referring to or permitting evidence of the others.[20]

As in *Roman v. State*,[21] the Spectrum and KFC robberies were strikingly similar and appeared to be a spree of criminal activity involving a common modus operandi. In each robbery, the perpetrator, as described by the victims, had similar physical characteristics, wore the same type of mask, used the same rifle to threaten the cashier, demanded that the money from the register be placed in a bag, and stole money from a bystander. The robberies were committed a day apart at stores across the street from each other. The court did not abuse its discretion in denying the motion to sever.[22]

---

[16] Id.

[17] 192 Ga. App. 87 (383 SE2d 640) (1989).

[18] *Huntley*, supra, 244 Ga. App. at 214 (2); see *Pickens v. State*, 225 Ga. App. 792, 796 (1) (c) (484 SE2d 731) (1997).

[19] (Citation and punctuation omitted.) *Dennis v. State*, 263 Ga. 257, 259 (6) (430 SE2d 742) (1993).

[20] (Citation and punctuation omitted.) *Roman v. State*, 245 Ga. App. 225, 226 (2) (537 SE2d 684) (2000).

[21] Id.

[22] See *Collins v. State*, 240 Ga. App. 289, 290-291 (1) (523 SE2d 359) (1999) (where same weapon was used in both robberies, no abuse to deny motion to sever); *Sanders v. State*, 236

In his appellate brief, Gunsby attempts to expand the scope of his enumeration of error by arguing that the court should have also severed the fourth robbery charge, on which charge he was acquitted. A party cannot use his brief to expand his enumerations of error to include issues or rulings not raised in the enumerations of error.[23]

4. Gunsby urges that he was denied effective assistance of counsel in that his counsel failed to (a) effectively cross-examine witnesses, (b) recall certain witnesses who had testified favorably to him during the State's case, and (c) put on alibi witnesses and pursue an alibi defense. We have carefully reviewed the trial transcript and the motion for new trial transcript, in which Gunsby's trial counsel defended his decisions in these matters. We find ample evidence to support trial counsel's decisions.[24] As in *Esquivel v. State*,[25] we do not find it necessary to address specifically and individually each and every one of Gunsby's numerous instances of challenged trial tactics. Suffice it to say that the decisions on which witnesses to call,[26] whether to put on evidence so as to preserve the final word in closing argument,[27] how to conduct cross-examinations,[28] whether to call indefinite alibi witnesses,[29] and whether to pursue an alibi defense[30] are strategic and tactical decisions that, after thorough investigation and client consultation, are virtually unchallengeable and do not require a finding of ineffective assistance of counsel.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED JANUARY 23, 2001 —
RECONSIDERATION DENIED FEBRUARY 9, 2001 — 

*Charles R. Floyd, Jr.,* for appellant.
*Peter J. Skandalakis, District Attorney, Lynda S. Engel, Assistant District Attorney,* for appellee.

---

Ga. App. 578, 580 (1) (a) (512 SE2d 678) (1999) (similar robberies committed within 16 days in same neighborhood need not be severed); *Bailey v. State*, 157 Ga. App. 222, 224 (3) (276 SE2d 843) (1981) (similar crimes separated by only a few days and one-fourth mile constitute a continuous series of acts; no abuse to deny severance).

[23] *Felix v. State*, 271 Ga. 534, 539, fn. 6 (523 SE2d 1) (1999); *Duffey v. State*, 232 Ga. App. 693 (498 SE2d 816) (1998).

[24] Cf. *Esquivel v. State*, 236 Ga. App. 325, 326 (512 SE2d 61) (1999).

[25] Id.

[26] Id.

[27] *Silcox v. State*, 241 Ga. App. 845, 846 (d) (528 SE2d 271) (2000).

[28] *Ellison v. State*, 242 Ga. App. 636, 639 (7) (c) (530 SE2d 524) (2000).

[29] *Hall v. State*, 243 Ga. App. 804, 806 (534 SE2d 196) (2000).

[30] *Nelson v. State*, 242 Ga. App. 63, 66 (8) (528 SE2d 844) (2000).