A01A2365. SCHWINDLER v. THE STATE.
(563 SE2d 154)

MILLER, Judge.

Frank Schwindler was convicted of various counts of child molestation and one count of failing to report school attendance, all of which arose out of his operation of a boarding school that trained youth on the operation of a tall sailing ship. He raises 28 enumerations of error on appeal, none of which have merit. We therefore affirm. We also affirm the dismissal of his criminal complaint filed against the prosecuting attorney.

Construed in favor of the verdict, the evidence shows that in the mid-1990s, Schwindler organized a program/boarding school to train adolescents how to operate a tall sailing ship moored on a river in Chatham County. The students would often stay overnight on the ship. T. B., a 12-year-old male resident of Chatham County, became a member of the program in 1997. In November 1997, Schwindler brought T. B. into his onboard cabin and, touching T. B.'s penis, propositioned him. T. B. eventually consented, and Schwindler removed T. B.'s pants and underwear and performed oral sex on him. Thereafter, Schwindler invited T. B. to spend the night on the ship numerous times, where he would repeatedly perform oral sex on the boy and also (using Vaseline) masturbate himself while doing so. These sexual episodes onboard the ship occurred hundreds of times. As a reward, Schwindler purchased expensive gifts for the boy, including rollerblades, food, clothing, and a surfboard.

Similar episodes occurred in Schwindler's nearby apartment in Chatham County, where Schwindler often invited the students to sleep. Schwindler invited T. B. to sleep in Schwindler's bedroom, where Schwindler then fondled T. B.'s penis, performed oral sex on

him, and using Vaseline, masturbated in the boy's presence. These sexual episodes in the apartment also occurred hundreds of times. One time Schwindler forced the boy to perform oral sex on Schwindler, and another time he arranged to have the boy and him watch a pornographic video together, which depicted young males engaging in oral and anal sex.

A Chatham County grand jury indicted Schwindler on three counts of child molestation (Count 1 — touching the boy's penis, Count 2 — masturbating in the boy's presence, and Count 3 — showing the boy the homosexual video), two counts of aggravated child molestation (Count 4 — performing oral sodomy on the boy, and Count 5 — the boy performing oral sodomy on him), two counts of enticing a child for indecent purposes (Count 6 — enticing the boy to the apartment, and Count 7 — enticing the boy to the ship), one count of sexual exploitation (Count 8 — possessing a photograph of a young boy exposing his sex organ), and one count of violating the school reporting requirements of OCGA § 20-2-690 (Count 9). The court entered a directed verdict of acquittal on the exploitation count, and a jury found Schwindler guilty on the remaining counts. Schwindler moved for a new trial and also filed a criminal complaint against the prosecuting attorney, accusing him of misconduct during the trial. After holding a joint hearing on both matters, the court in one order denied the motion for new trial and in another dismissed the criminal complaint due to a lack of probable cause. Schwindler appeals both orders. We will first address Schwindler's conviction and then the criminal complaint against the prosecutor.

1. *Enumeration No. 1.* Schwindler first complains that the court erred in admitting evidence obtained through two searches of his apartment conducted pursuant to search warrants. He argues that the affidavit supporting the first warrant was insufficient to provide probable cause and that the officers seized material not covered by the search warrant. After a hearing, the trial court denied Schwindler's motion to suppress.

In reviewing this enumeration, we construe the evidence in favor of the court's ruling and uphold its findings if there is any evidence to support them. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); see *Bragg v. State*, 249 Ga. App. 430 (1) (548 SE2d 121) (2001). The question is whether the testimony given in favor of the warrant provided the issuing judge a substantial basis for concluding that probable cause existed to issue the warrant. *DeYoung v. State*, 268 Ga. 780, 787 (7) (493 SE2d 157) (1997); see *Bragg*, supra, 249 Ga. App. at 431 (2). The lower court's task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability

that contraband or evidence of a crime will be found in a particular place." (Citation and punctuation omitted.) *DeYoung*, supra, 268 Ga. at 787 (7). The Fourth Amendment's strong preference for searches conducted pursuant to a warrant means that we accord substantial deference to the lower court's finding of probable cause and that we decide doubtful or marginal cases largely in favor of finding the warrant valid. *Bragg*, supra, 249 Ga. App. at 431 (2).

Here the ten-page detailed affidavit underlying the first warrant reflected that the testifying officer met with numerous people about possible allegations of molestation by Schwindler. The officer met with Cody Cahoon, a student in the sailing program who described the multiple "sleep overs" on the ship and in Schwindler's apartment. Cody related that Schwindler had T. B. sleep in Schwindler's bedroom, that Schwindler maintained file cabinets and computers at the apartment, that Schwindler had various pictures of T. B. in his apartment, that a fellow student had found a dildo and a jar of Vaseline under Schwindler's mattress, that the fellow student had also discovered at the apartment a pornographic video depicting homosexual acts, and that after the training school moved to South Carolina, Vaseline was found under Schwindler's mattress in the isolated tent he shared with T. B.

The officer met with Megan Littlejohn, another student in the program. She confirmed in an audiotaped interview that she had heard sexual noises coming from the tent in which Schwindler and T. B. were sleeping in South Carolina. After she confronted T. B. about the matter, he admitted that he and Schwindler were engaging in sexual acts. Megan also discovered the pornographic video in the apartment, which she briefly watched to determine its contents. When changing Schwindler's bed linens at the apartment, she found a dildo, a book depicting male homosexual acts, and Vaseline under his bed. Her parents told the officer that they had observed Schwindler kissing and hugging T. B., something that he did not do with other students.

The officer met with Tom Anderson, a corporate pilot who served as a volunteer assistant at the sail training school. He confirmed that T. B. slept in Schwindler's apartment bedroom and in Schwindler's South Carolina tent. He related conversations with students such as Cody and Megan confirming that Vaseline had been found under Schwindler's bed in his apartment and tent. He further related that Schwindler refused to address his sleeping arrangements with T. B., leading to Anderson's resignation from the school board of directors. He stated that the training school's business records and computers were kept in the Chatham County apartment and that the school itself had many irregularities in its operation and reporting.

The officer personally drove to the South Carolina and apart-

ment sites to confirm their locations. She ran a criminal computer check on Schwindler and learned he had previously been convicted of child molestation and arrested for producing child pornography and for molesting another child. Based on this affidavit, the court found probable cause that tangible evidence of the crimes of child molestation and violating the compulsory school attendance laws would be found at the apartment, including the person of T. B., pictures of T. B., VCR tapes depicting sexual acts, a book depicting homosexual acts, a container of Vaseline petroleum jelly, a dildo, computers, and school business records.

In executing the warrant, police did not find T. B. but did find and seize pictures of him, the VCR tape, the book, the petroleum jelly, a dildo, the computers, school business records as well as marijuana and miscellaneous papers and files. Police eventually located T. B., who recounted the molestation and included details such as the purchasing of surfboards for him, which led to a second warrant to search for those surfboards. The second warrant also sought further computer records pertaining to sexual acts. The second search resulted in the seizure of three surfboards and computer material.

We hold that the underlying affidavits provided the lower court with ample, reliable evidence to find probable cause for the searches. Much of the information was firsthand, the informants were identified and shown to be reliable, their statements were corroborated by others and by police observations, and the items were described with sufficient particularity. Cf. *Bragg*, supra, 249 Ga. App. at 432 (2); *Whitten v. State*, 174 Ga. App. 867 (1) (331 SE2d 912) (1985). The additional seized correspondence, though not specifically listed in the warrant, was sexual in nature and therefore relevant to the suspected crimes; thus, it was properly seized. See *Walsh v. State*, 236 Ga. App. 558, 560 (1) (b), (c) (512 SE2d 408) (1999).

2. *Enumeration No. 2.* Schwindler argues that his indictment was not sufficiently particular and further charged multiple unrelated offenses. He asserts that the counts were unclear as to dates and locations and that the various offenses were not related in time or place.

The test as to the definiteness of the indictment is whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. *Smith v. State*, 249 Ga. App. 39, 42 (2) (547 SE2d 598) (2001). With regard to identifying the place of the crimes, an indictment that charges the crimes to have been committed in a particular county is sufficiently certain (unless the character of the place is an essential element of the offense, which is not applicable here). *Gentry v. State*, 235 Ga. App. 328, 329-330 (3) (508 SE2d 671) (1998). With regard to identifying the time of the crimes, alleging an exact date is not

needed unless it is an essential averment of the crime charged. *Snider v. State*, 238 Ga. App. 55, 58 (2) (516 SE2d 569) (1999). Thus, alleging that child cruelty occurred sometime during a four-year period and that child molestation occurred sometime during an eighteen-month period was held sufficient. Id.; see *Gentry*, supra, 235 Ga. App. at 329-330 (3).

Here the indictment charges that the five specified acts of child molestation and aggravated child molestation occurred in Chatham County between the dates of November 1, 1997, and December 31, 1998. The two enticement counts allege that Schwindler enticed T. B. to the specified locations of the apartment and the ship (both of which were located in Chatham County) for the purpose of child molestation, sometime between November 1, 1997, and December 31, 1998. The sexual exploitation count alleges that on February 8, 1999, Schwindler possessed in Chatham County sexually lewd material involving a minor. The school reporting count alleges that between May 7, 1998, and February 10, 1999, Schwindler in Chatham County failed to report attendance to the Savannah-Chatham County public school district. Based on the authorities cited above, the indictments were sufficiently definite.

Schwindler's complaint about the counts being contained in the same indictment also fails. "The rule is well established that separate and distinct offenses of a similar nature, and of the same class or species, may be properly joined in different counts in the same indictment." (Citations and punctuation omitted.) *Wingfield v. State*, 231 Ga. 92, 99 (12) (200 SE2d 708) (1973). The seven counts involving the molestation of T. B. and the count involving the possession of child pornography are of the same class or species. The joinder of the school reporting count was also appropriate, in that it was part of a single scheme or plan to use the school to facilitate the molestation. See *Wilcox v. State*, 271 Ga. 544, 546 (2) (522 SE2d 457) (1999). We discern no error.

3. *Enumeration Nos. 3, 25, and 26.* Schwindler claims that jurisdiction and venue in Chatham County were improper with respect to Counts 1, 2, 4, 5, 7, and 9. His argument regarding Count 9 (school reporting violation) is that the school was located in South Carolina and thus not subject to Georgia reporting requirements. This argument first ignores that the unincorporated and unregistered school (a) kept its records in Schwindler's apartment in Chatham County, (b) conducted a class in that apartment, and (c) provided transportation to the school from that apartment. More importantly, OCGA § 20-2-690 (b) (5) requires all administrators of private schools (regardless of location) which teach a student who resides in a Georgia public school district to report that student's attendance to the school superintendent of the public school district. As Schwindler

failed to report the attendance of T. B. and other Chatham County residents to that district's superintendent, venue and jurisdiction were appropriate in Chatham County.

The venue challenge to the other counts rests on the premise that the ship was of Canadian registry and on the argument that acts on the ship were therefore not subject to the laws of Georgia. Without addressing the merits of the argument, we note that there was no evidence at trial of a foreign registry of the boat. Thus, this challenge lacks a factual basis in the record.[1] The undisputed evidence showed that the vessel was located in Chatham County at the time of the crimes.

4. *Enumeration No. 4.* Schwindler claims that the prosecution failed to turn exculpatory evidence over to him, which evidence included electronic messages and other material. Testimony at the motion for new trial hearing showed that all such material was given to Schwindler. As the trial court determines the credibility of witnesses at such hearings, *Buice v. State*, 239 Ga. App. 52, 61 (6) (b) (520 SE2d 258) (1999), we will not overturn its determination that Schwindler's testimony to the contrary was incredible.

5. *Enumeration Nos. 5, 7, 17, and 18.* Schwindler complains about various evidentiary rulings that he claims unfairly prejudiced his case. First, he argues that the admission of photos showing him performing oral sodomy on other young boys, which he admitted were accurate photos of him engaging in the depicted behavior, was error. As this is the very conduct of which he was accused here, the photos were admissible. See *Simpson v. State*, 271 Ga. 772, 774 (1) (523 SE2d 320) (1999).

Second, he contends the court erred in admitting certain adoption records and correspondence. Since he did not object to their admission below, the matter is not preserved for appeal. *Stroud v. State*, 272 Ga. 76, 77 (3) (526 SE2d 344) (2000); see *Heidler v. State*, 273 Ga. 54 (1) (537 SE2d 44) (2000).

Third, he claims the court erred (a) in admitting his Navy records showing that he did not achieve the rank of captain and that he was not discharged as a result of a relative's crime, and (b) in admitting his school records showing he had not received a doctorate degree. As these records impeached Schwindler's recruitment statements made to parents of potential students, they were relevant and admissible to demonstrate the sham nature of the school.

Fourth, he argues that the court erred in admitting certain cor-

---

[1] The first mention of its possible foreign registry was in an unauthenticated hearsay letter introduced at the motion for new trial hearing that only implied that the vessel may at one time have had a Canadian registry. The evidence was untimely, and hearsay evidence lacks probative value. *Howard v. State*, 238 Ga. App. 461, 462 (518 SE2d 152) (1999).

respondence between a prosecution witness and himself, in which Schwindler's relationship to this witness was shown to be a father/adopted son relationship and in which Schwindler admits to the molestation of T. B. The adopted son turned these letters over to the prosecution as part of a plea agreement. Schwindler's argument that he confessed to the molestation so as to give his adopted son leverage in negotiating a plea bargain is not grounds for excluding the letters.

Fifth, Schwindler contends that the prosecution failed to give him notice of its intent to introduce child hearsay statements. See OCGA § 24-3-16. There is, however, "no requirement in OCGA § 24-3-16 that the state provide the defense with pre-trial notice of its intention to introduce child hearsay statements in evidence." *Thornton v. State*, 264 Ga. 563, 567 (2) (d) (449 SE2d 98) (1994).

Sixth, Schwindler urges that the court should not have admitted photos obtained during a search in 1985 by the Alabama police, which led to his guilty plea in Alabama of possession of child pornography. He claims that the search was illegal, that he has asserted such grounds in an unresolved post-conviction pleading in Alabama, and that the Georgia court could not use such photos while the question was pending in Alabama. Without addressing the argument, we note that Schwindler makes no citations to the record and that our own review reveals no facts in the record to support the assertion that the matter is still a pending issue in Alabama; thus, the entire argument lacks a factual premise. See *Price v. State*, 223 Ga. App. 807, 810-811 (6) (478 SE2d 915) (1996).

6. *Enumeration No. 6.* Schwindler argues that the court erred in admitting three similar transactions to show his bent of mind: a 1973 molestation of a four-year-old girl, a 1985 conviction for possessing obscene material showing him performing oral sodomy on young boys (which conduct took place from 1981 to 1984), and a 1987 conviction for molesting a young boy. He contends that the transactions are too old and that sexual activity with a young girl is not relevant to the alleged molestation of a young boy.

"The rule allowing similar transaction evidence has been most liberally extended in the area of sexual offenses." (Footnote omitted.) *Hardeman v. State*, 247 Ga. App. 503, 506 (4) (a) (544 SE2d 481) (2001). Thus, in child molestation cases, prior "sexual abuse of young children, regardless of the sex of the victims or the nomenclature or type of acts perpetrated upon them, is of sufficient similarity to make the evidence admissible." (Citations and punctuation omitted.) *Couch v. State*, 248 Ga. App. 238, 239 (2) (545 SE2d 685) (2001); accord *Willett v. State*, 223 Ga. App. 866, 872 (3) (a) (479 SE2d 132) (1996). Contrary to Schwindler's argument, *Gilstrap v. State*, 215 Ga. App. 180, 182 (5) (450 SE2d 436) (1994), is consistent with these principles.

Although the similar transactions took place some years ago,

they reflect a continuous course of conduct over a period of several years. See *Starnes v. State*, 205 Ga. App. 882, 883 (1) (424 SE2d 4) (1992). The gaps are largely explained by Schwindler's time in the Navy, which often took him overseas, and his incarceration for the child molestation conviction. We discern no abuse of discretion. See *Frady v. State*, 245 Ga. App. 832, 835 (4) (538 SE2d 893) (2000) (abuse of discretion standard).

7. *Enumeration No. 8.* Schwindler claims that the court erred in denying him the right to cross-examine witnesses. Specifically, he complains about the court's rulings precluding him from (a) inquiring into the family lifestyle and sexual history of the victim and (b) asking whether Schwindler acted appropriately toward other students.

Although OCGA § 24-9-64 entitles a defendant to a thorough and sifting cross-examination of witnesses against him, "[t]he scope of cross-examination is not unlimited, but rests largely within the discretion of the trial court, and its discretion will not be disturbed on appeal unless it has been abused." (Citations and punctuation omitted.) *Carter v. State*, 257 Ga. 510, 511 (1) (361 SE2d 175) (1987). Indeed, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." (Citations and punctuation omitted.) Id. at 512 (1).

Here Schwindler wanted to show that the victim had engaged in homosexual activities with others and that his family allowed such because of their own sexual propensities. Schwindler reasoned that to divert attention from this deviancy (so that the victim could continue this lifestyle), the victim was falsely accusing Schwindler. The propensity for such tenuous evidence to be used as a means of simply impugning the character of the victim caused the trial court to conclude that the prejudice of admitting the evidence outweighed any possible relevance. We discern no abuse of discretion. Cf. *Hall v. State*, 196 Ga. App. 523, 525 (2) (396 SE2d 271) (1990) (previous sexual activity of child molestation victim irrelevant to show victim's reputation for nonchastity or preoccupation with sex).

With regard to acting appropriately toward other students, the record reflects that Schwindler was indeed allowed to explore this area of inquiry. To the extent he was restricted in this area, the trial court acted within its discretion, for such was not relevant to proving whether he molested T. B. We discern no abuse of discretion.

8. *Enumeration No. 9.* Schwindler contends he was denied the right to be tried by a fair and impartial jury in that juror no. 19 admitted to knowing one of the State's witnesses but was nevertheless allowed to remain on the jury. After this juror admitted to knowing the witness, however, Schwindler expressly waived any objection to the juror remaining on the jury. Any complaint by Schwindler that

the juror did not disclose the full extent of the relationship is based on testimony at the motion for new trial hearing, which testimony the trial court found incredible. See *Buice*, supra, 239 Ga. App. at 61 (6) (b) (determining the credibility of witnesses at the motion for new trial hearing is in trial court's discretion).

Schwindler also claims that juror no. 19 was overheard, prior to the end of trial, expressing his feeling to another juror that Schwindler was guilty. Once again, this was based on testimony at the post-trial hearing that the court found incredible. Moreover, Schwindler did not call the juror to testify, and thus the evidence was hearsay and could not authorize the grant of a new trial. *Boone v. State*, 250 Ga. App. 133, 137 (5) (549 SE2d 713) (2001).

9. *Enumeration Nos. 10 and 14.* Schwindler argues that he was forced to be represented by hostile trial counsel, who refused to follow his instructions. He claims the court refused to appoint new counsel even though trial counsel, outside the presence of the jury, accused Schwindler of lying about alleged misconduct by the trial counsel. He also complains that the court denied him the right to represent himself pro se. See generally *Howard v. State*, 251 Ga. App. 243, 245 (6) (553 SE2d 862) (2001) (federal and state constitutions guarantee individuals right to self-representation).

Before trial the court complied with Schwindler's request for appointed trial counsel to take the place of retained counsel. The court specifically instructed counsel to consider carefully four pro se motions filed by Schwindler during the brief time he was unrepresented. When shortly before trial Schwindler asked the court to replace the appointed counsel, the court pointed out that a defendant cannot pick and choose that counsel and invited Schwindler to present a substantial reason for replacing counsel. See *Mitchell v. State*, 242 Ga. App. 177, 183 (6) (529 SE2d 169) (2000) (request to replace appointed counsel in court's discretion).

Schwindler then complained that counsel had not filed motions to exclude the similar transaction evidence and to object to venue and jurisdiction. The court pointed out that the hearing being held that day was to determine whether to allow in the similar transaction evidence and that no motion was necessary. The court also noted that the State had the obligation to prove venue and jurisdiction as a part of its case, and thus again a motion was unnecessary. The court denied the request for new counsel, but asked whether Schwindler wanted to represent himself pro se. Schwindler hinted that he may want "hybrid counsel," but then decided against it because he felt there could only be "one captain on the ship." Since Schwindler was equivocal in his response and did not express a desire to proceed pro se, the court discerned no request for pro se representation and

allowed appointed counsel to proceed. We discern no abuse of discretion.

Near the end of trial, Schwindler again complained about his counsel, this time stating that even though counsel was an excellent attorney, he was not listening to Schwindler, and that counsel outside the presence of the jury called Schwindler a liar regarding Schwindler's accusation of misconduct against counsel. Later that day, Schwindler changed his mind and announced that his difficulties with counsel had been resolved and that he wanted counsel to continue to represent him. Thus, any possible error in not allowing Schwindler to receive other counsel or to proceed pro se earlier was rendered harmless. *Williams v. State*, 183 Ga. App. 373, 374 (1) (358 SE2d 914) (1987).

At the sentencing hearing, Schwindler demanded that his trial counsel be dismissed and that he be permitted to proceed pro se, which request the court allowed after making the requisite inquiries. The court, however, invited Schwindler to request the appointment of appellate counsel for post-sentencing proceedings. After sentencing, Schwindler announced his desire for appellate counsel, and the court appointed one.

At the motion for new trial hearing, Schwindler changed his mind and announced he wanted his appellate counsel to serve as cocounsel with him. A defendant has no right to such hybrid representation. *Potts v. State*, 259 Ga. 812, 816 (4) (388 SE2d 678) (1990); see *Boone*, supra, 250 Ga. App. at 139 (10). Thus, the court was acting within its discretion when it initially allowed the hybrid representation but later disallowed it by permitting only appellate counsel to address the court.

10. *Enumeration No. 11.* Schwindler claims that he received ineffective assistance of counsel. To establish this claim, Schwindler bore the burden at the motion for new trial hearing of showing that trial counsel's performance was deficient and that the deficient performance prejudiced his defense. *Stephens v. State*, 265 Ga. 120, 121 (2) (453 SE2d 443) (1995). The trial court found he did not prove these matters. We uphold the trial court's determination on these issues unless clearly erroneous. *Pittman v. State*, 243 Ga. App. 564, 565 (2) (533 SE2d 769) (2000).

We have carefully reviewed the trial transcript and the motion for new trial transcript, in which Schwindler's trial counsel defended his decisions on the various strategic matters challenged by Schwindler. We find ample evidence to support trial counsel's decisions. Cf. *Gunsby v. State*, 248 Ga. App. 18, 22 (4) (545 SE2d 56) (2001). As in *Esquivel v. State*, 236 Ga. App. 325, 326 (512 SE2d 61) (1999), and *Gunsby*, supra, 248 Ga. App. at 22 (4), we do not find it necessary to address specifically and individually each and every one of Schwind-

ler's numerous instances of challenged trial tactics. Suffice it to say that the decisions on which witnesses to call, whether to put on evidence so as to preserve the final word in closing argument, how to conduct cross-examinations, what motions to file, and what objections to make are strategic and tactical decisions that, after thorough investigation and client consultation, are virtually unchallengeable and do not require a finding of ineffective assistance of counsel. See *Stroud*, supra, 272 Ga. at 78 (4); *Welch v. State*, 243 Ga. App. 798, 800 (2) (534 SE2d 471) (2000); *Gunsby*, supra, 248 Ga. App. at 22 (4).

Finally, Schwindler's complaint that counsel improperly turned over privileged documents to a third party fails in light of Schwindler's express instruction to counsel to turn over those documents. The findings of the trial court against Schwindler on this matter are not clearly erroneous.

11. *Enumeration No. 12.* Citing *Apprendi v. New Jersey*, 530 U. S. 466 (120 SC 2348, 147 LE2d 435) (2000), Schwindler contends that the court erred in not requiring the State to prove his prior convictions beyond a reasonable doubt in order to have him sentenced as a recidivist under OCGA § 17-10-7. However, *Apprendi* held that "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis supplied.) 530 U. S. at 490. As the prior convictions were the basis for the increased sentences, the court could properly determine such without a jury. Here the certified convictions provided ample support for the court's enhancement of the sentences. See OCGA §§ 17-10-7 (a); 16-6-4 (b).

12. *Enumeration No. 13.* Schwindler received concurrent life sentences with respect to Counts 1 through 3, which charged child molestation; 30 years, consecutive to Counts 1 through 3, with respect to Counts 4 and 5, which charged aggravated child molestation; 20 years, concurrent with all other counts, with respect to Counts 6 and 7, which charged enticing a child for indecent purposes; and a $100 fine with respect to Count 9, which charged failure to report school attendance. He claims that his sentences were excessive and disproportionate.

These sentences all fall within the maximum sentences allowed by the relevant statutes. See OCGA §§ 16-6-4 (b), (d) (1); 16-6-5 (b); 20-2-690 (d). "[W]here the sentences imposed are within the statutory limits, as they are here, they are not unconstitutional." (Citation and punctuation omitted.) *Johnson v. State*, 246 Ga. 126, 128 (IV) (269 SE2d 18) (1980). Any complaints regarding the severity should have been addressed to the appropriate sentence review panel. *Pendleton v. State*, 184 Ga. App. 358, 361 (4) (361 SE2d 663) (1987).

13. *Enumeration No. 15.* Schwindler argues that the cumulative effect of all the errors so prejudiced him as to require reversal. "However, Georgia does not follow a cumulative error rule of prejudice. [Cit.]" *Laney v. State*, 271 Ga. 194, 198 (11) (515 SE2d 610) (1999).

14. *Enumeration No. 16.* Schwindler claims that the State interfered with his defense team when it solicited Schwindler's adopted son to testify against him. Without addressing the merits of the argument, we note that this argument is premised on Schwindler's assertions that his son was an integral part of his team and that the State solicited his son. Evidence at the motion for new trial hearing proved otherwise. Indeed, the assertion that the information (such as letters) that the son received from Schwindler was somehow privileged contradicts Schwindler's assertion at trial that he intentionally wrote these incriminatory letters to his son so that his son, in negotiating a plea bargain with the State, could give the letters to the State in exchange for a lesser sentence.

15. *Enumeration No. 19.* Schwindler complains that prison officials took from him papers critical to his defense, thereby prejudicing his case. The court held a hearing mid-trial and post-trial on this matter and, relying on the testimony presented, found Schwindler's complaints lacking in foundation. As the trial court judges the credibility at such hearings, we discern no error. See *Buice*, supra, 239 Ga. App. at 61 (6) (b). Schwindler's further complaint that he has been denied access to the law library is without support in the record and is not the subject of a court ruling in the appeal before us.

16. *Enumeration No. 20.* Schwindler contends that the trial court abused its discretion when it denied his request for a continuance of his sentencing hearing. The grounds for the request were that Schwindler had just dismissed his trial counsel. The court properly considered the factors before it, including Schwindler's voluntary conduct in dismissing his counsel just before sentencing. See *Guest v. State*, 229 Ga. App. 627, 628 (1) (494 SE2d 523) (1997) (" 'The conduct of the party is a relevant and proper consideration of the (trial court) in the exercise of its discretion in order to prevent a party (from) using the discharge and employment of counsel as a dilatory tactic.' [Cit.]"); see also *Howard*, supra, 251 Ga. App. at 245 (6). We discern no abuse of discretion. Moreover, Schwindler "has failed to demonstrate any harm from the denial of the continuance. [Cit.]" *Roberts v. State*, 272 Ga. 822, 824 (2) (537 SE2d 86) (2000).

17. *Enumeration No. 21.* Schwindler argues that the trial court erred in not recusing itself and all judiciary members of the local circuit in determining the claim of ineffective assistance of counsel. He claims that his trial counsel serves as a part-time magistrate for Chatham County and that therefore the local judiciary could not impartially decide the question of his effectiveness as Schwindler's

counsel. Once again, Schwindler's claim lacks a factual basis in the record, as he makes no record citation showing evidence of his counsel's magistrate status, nor do we find any such evidence. Moreover, Schwindler made no recusal motion on this basis below, thus waiving the issue for appeal. See *Thurman v. State*, 249 Ga. App. 390-391 (1) (547 SE2d 715) (2001).

18. *Enumeration No. 22.* Schwindler complains that the trial court failed to supplement the appellate record with certain pleadings. The court found that the missing pleadings were immaterial. As Schwindler has failed to demonstrate that the pleadings are essential to the disposition of his appeal, we discern no error.

19. *Enumeration No. 23.* Schwindler challenges the sufficiency of the evidence on Count 3 (child molestation arising out of showing a pornographic video to a child under 16). As charged in the indictment, the evidence demonstrated that Schwindler, in his apartment in Chatham County, showed T. B. a pornographic video graphically depicting oral and anal sodomy between young males. Schwindler's claim that there was no VCR at the apartment is belied by the testimony of the victim and of Schwindler's own adopted son who lived at the apartment. The evidence sufficed to sustain the conviction. See OCGA § 16-6-4 (a); *Stroeining v. State*, 226 Ga. App. 410, 412 (1) (486 SE2d 670) (1997) (physical precedent only).

20. *Enumeration No. 24.* Schwindler also challenges the sufficiency of the evidence for the convictions on Counts 6 (enticing T. B. to the apartment for indecent purposes) and 7 (enticing T. B. to the ship for indecent purposes). The evidence, which showed that Schwindler repeatedly solicited and enticed T. B. to his cabin on the ship and to his apartment bedroom for purposes of molesting him, sufficed. OCGA § 16-6-5 (a).

21. *Enumeration Nos. 27 and 28.* The final two enumerations concern the dismissal of the criminal complaint against the assistant district attorney who prosecuted Schwindler's case. Following his conviction, Schwindler filed a complaint against the prosecutor to hold him criminally liable for his conduct during the trial. At the motion for new trial hearing, Schwindler adopted the allegations made in his complaint against the prosecutor and asked the court to consider them in conjunction with his motion for new trial. Since the complaint was based largely on the same grounds asserted in Schwindler's motion for new trial, the trial court acquiesced and ordered that it was consolidating the probable cause hearing on the complaint (see OCGA § 15-18-27 (a)) with the hearing on the motion for new trial. Schwindler raised no objection at the hearing. Schwindler was thereafter, in two additional days of hearings, allowed to present whatever evidence he deemed appropriate for these consolidated issues.

Schwindler either induced the court's ruling to consolidate the hearings or at least acquiesced therein. In any case, his argument on appeal that the court erred in exercising its discretion to consolidate the hearings is waived. Moreover, we can discern no abuse of that discretion. Nor do we perceive any grounds for the court to have recused itself from the probable cause hearing. Thus, the court did not err in dismissing the complaint against the prosecutor as lacking probable cause.

*Judgments affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 14, 2002 —
RECONSIDERATION DENIED MARCH 29, 2002 — 

*Zipperer & Lorberbaum, Steven L. Beauvais, Eric R. Gotwalt*, for appellant.

Frank J. Schwindler, *pro se.*

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney*, for appellee.