A05A1889. NELSON v. THE STATE.
(625 SE2d 465)

BERNES, Judge.

A Jefferson County jury convicted Lindsey Nelson, Jr. of one count of burglary with intent to commit theft, one count of burglary with intent to commit terroristic threats, and one count of terroristic threats. The trial court merged the second burglary count into the first burglary count for sentencing purposes. After considering Nelson's prior felony convictions, the trial court sentenced Nelson as a fourth-time felony offender under the repeat offender statute, OCGA § 17-10-7 (c). Nelson appeals, contending that there was insufficient evidence to convict him of the three charged offenses. Nelson further asserts that the trial court erred by charging the jury that it could infer an intent to commit theft on the first burglary count and in its definition of terroristic threats; allowing testimony concerning the long-term effects of the offenses on the victim's mental state; allowing

testimony in which marks on the victim were labeled as an "injury" or "wound" and Nelson's words were characterized as "threats"; failing to merge the terroristic threats count into the burglary counts for sentencing purposes; and improperly sentencing Nelson as a fourth-time felony offender under the repeat offender statute. Finally, Nelson contends that he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

1. Nelson challenges the sufficiency of the evidence on all three counts. When a defendant contends that there was insufficient evidence to convict him, we review the evidence in the light most favorable to the verdict, and we neither assess witness credibility nor weigh the evidence. *Green v. State*, 244 Ga. App. 565 (1) (536 SE2d 240) (2000). The defendant no longer enjoys the presumption of innocence. Id. "[A]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Phanamixay v. State*, 260 Ga. App. 177, 178 (1) (581 SE2d 286) (2003).

So viewed, the evidence shows that Hattie Robertson Haynes, an 83-year-old widow, lived alone in a private residence located in Jefferson County. During the early morning hours of March 3, 2001, Ms. Haynes was suffering from the flu and was having trouble sleeping. After awakening because of her illness at approximately 3:00 a.m., Ms. Haynes checked the locks on her doors and windows, returned to bed, and drifted off to sleep.

As Ms. Haynes slept, a male later identified as Nelson secretly entered into her home through the back door. Nelson did not have permission to enter the home and had not been invited. At approximately 4:00 a.m., Ms. Haynes was startled awake as Nelson pulled the covers away from her body. Nelson got on top of Ms. Haynes, straddling her as she lay on the bed. Ms. Haynes screamed, begging Nelson not to rape her and to get out of her home. "Scared and trembling," Ms. Haynes attempted to resist, but Nelson grabbed her wrists and pinned them down on the bed. During the struggle, Nelson "made [her] arm hurt" and caused a "red swelling area" underneath Ms. Haynes' left eye. Nelson warned her to stop screaming and not to make him mad, or he would hurt or kill her.

Ms. Haynes then "slowed down," asked Nelson to get off of her because she had arthritis and was in pain, and once again pleaded with him to leave her home. Nelson got out of the bed but refused to leave. Nelson briefly sat down in a bedside chair, but then began pacing back and forth across the bedroom. While he paced, Nelson told Ms. Haynes that he had been in her home for an hour before she awakened. Nelson also pointed to a gold chain around his neck and stated that "this [is] what people go to jail for" and that "[b]oys go to

jail and prison for these gold chains." Nelson told Ms. Haynes that the gold chain around his neck was "just like the one you got." Ms. Haynes looked over at her dresser and realized that Nelson had seen her jewelry box lying there, had taken a gold chain out of it, and had placed the chain on the nightstand by her bed.

Nelson remained in Ms. Haynes' home for approximately one hour after she awakened. During that time, Nelson continued to pace back and forth, began to cry, told Ms. Haynes his name and where he lived, and stated that he was sick and needed help. Nelson told Ms. Haynes that his parents did not love him, that his mother would not put her arms around him, and that he wanted to talk to Ms. Haynes because she was a "Christian-hearted woman." "[F]rightened to death," Ms. Haynes pled with Nelson to leave, but he responded by threatening several times to kill her and warning her that he "could kill [her] in this house and walk out . . . [and] nobody would never know who killed [her]." Finally, Nelson wrote his name and address down on a piece of paper, told Ms. Haynes that he knew she would call the police, and left the premises.

Ms. Haynes called the police. A patrol officer with the City of Wrens Police Department responded to the call and found Ms. Haynes standing at the back door of the residence "visibly upset, shaken, [and] frightened." The officer also observed that Ms. Haynes had a red swollen area underneath her left eye that appeared to be a "fresh" wound.

That night, Ms. Haynes contacted her daughter in New Jersey to inform her of the incident, and her daughter noted that Ms. Haynes was still afraid at that point and "was tearful, crying, [and] very upset" as they spoke on the phone. Four days later, Ms. Haynes' daughter traveled to Jefferson County to be with her mother, who "cried [and] talked about it on and on," "couldn't sleep," and could no longer lay on the same side of the bed. As Ms. Haynes explained, "If I'd have been able, I'd just moved out of the house and sold it and got rid of it."

(a) Nelson contends that there was insufficient evidence to convict him of burglary with intent to commit theft. We conclude that any rational trier of fact could have found from the evidence presented at trial proof of Nelson's guilt of burglary with intent to commit theft beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another." OCGA § 16-7-1 (a). The first count of the indictment accused Nelson specifically of committing burglary with the intent to commit theft. Thus, there were two essential elements that the State had to establish: (1) that

Nelson entered Ms. Haynes' home without authority and (2) that he intended to commit a theft therein. *Lloyd v. State*, 168 Ga. App. 5 (308 SE2d 25) (1983).

Nelson does not dispute that he entered Ms. Haynes' home without permission. Rather, Nelson's contention is that the State failed to prove his intent to commit a theft beyond a reasonable doubt. We disagree.

> Whether the defendant entertained an intent to commit a theft after entering is a matter for the jury to say, under the facts and circumstances proved. As a general rule the state must, of necessity, rely on circumstantial evidence in proving intent. And the fact that the defendant may have failed in accomplishing his apparent purpose does not render a finding of burglary improper.

(Citations and punctuation omitted.) *Grice v. State*, 166 Ga. App. 706, 706-707 (1) (305 SE2d 438) (1983).

Here, the State relied on evidence that was sufficient to prove Nelson's intent. Ms. Haynes testified to the presence of valuables in her home, namely, the jewelry that she kept on her dresser. A jury may infer that a defendant intended to commit theft based on the presence of valuables inside the premises, when the jury concludes that there is no other apparent or credible motive for the defendant's unauthorized entry. See *Legg v. State*, 204 Ga. App. 356, 357 (1) (419 SE2d 151) (1992); *Addis v. State*, 203 Ga. App. 270, 271 (416 SE2d 837) (1992); *Parrish v. State*, 141 Ga. App. 631 (1) (234 SE2d 174) (1977).

A jury also is entitled to infer intent to commit theft based on the defendant's conduct following the unauthorized entry. *Ealey v. State*, 139 Ga. App. 604, 606 (2) (229 SE2d 86) (1976). As pointed out above, Ms. Haynes testified that Nelson told her he was in her home for an hour before she awoke, and that Nelson had taken a gold chain from the jewelry box on her dresser and placed it on her nightstand. Ms. Haynes also testified that Nelson stated that men go to jail in order to obtain gold chains like the one he had around his neck and the one lying on the nightstand. Based on this testimony, a rational jury could have inferred that Nelson entered Ms. Haynes' home to commit a theft and began to carry out his plan by seizing the gold chain, but reversed course and then fabricated another explanation to tell Ms. Haynes as to why he was in her home. See id. (jury may infer intent "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted") (citation omitted). See also *Holt v. State*, 147 Ga. App. 186, 186-187 (2) (248 SE2d 223) (1978) (evidence sufficient to support conviction for burglary with intent to commit theft when defendant

broke into elderly victim's home, straddled and assaulted her, and during course of assault looked in bedroom drawer for purse).

Nelson argues that the evidence failed to disprove his contention that he entered Ms. Haynes' home because he was emotionally distraught over his family situation and simply wanted to talk.[1] While Nelson did testify that he entered Ms. Haynes' home only because he was upset and needed to talk to someone, a "defendant's explanation may be rejected by the jury where that explanation is inconsistent with other direct and circumstantial evidence." (Citations and punctuation omitted.) *Underwood v. State*, 221 Ga. App. 93, 94 (1) (470 SE2d 699) (1996). Given the evidence already discussed, combined with evidence that Nelson entered Ms. Haynes' home without permission, secretly, and in the dead of night, the jury was authorized to reject Nelson's explanation for his entry as unreasonable. See id.[2]

(b) Nelson also argues that there was insufficient evidence to convict him of burglary with intent to commit terroristic threats. However, the trial court merged Nelson's conviction on this burglary count into his conviction on the first burglary count for sentencing purposes. "We need not consider an enumeration of error which addresses the sufficiency of the evidence to convict on a count on which the trial court failed to enter judgment." *Duvall v. State*, 250 Ga. App. 87, 89 (3) (550 SE2d 479) (2001).

(c) Nelson contends there was insufficient evidence to convict him of terroristic threats. We disagree and conclude that from the evidence adduced at trial, a rational jury was entitled to find Nelson guilty beyond a reasonable doubt of the charged offense. *Jackson*, 443 U. S. 307.

---

[1] Nelson contends that the evidence presented by the State failed to exclude every alternative, reasonable hypothesis of his innocence on the first burglary count. His argument is misguided.

[Nelson's] attempt to show [his] innocence by relying on the circumstantial evidence rule of OCGA § 24-4-6 necessarily presumes that the evidence was entirely circumstantial, which it was not. See *Lane v. State*, 255 Ga. App. 274, 276 (564 SE2d 857) (2002). See also *Barela v. State*, 271 Ga. 169, 171 (517 SE2d 321) (1999) ("When the evidence is entirely circumstantial . . . a conviction will be sustained only if the proven facts are both consistent with the hypothesis of guilt, and also exclude every other reasonable hypothesis except the guilt of the accused.").

*Miller v. State*, 265 Ga. App. 402, 403 (1) (593 SE2d 943) (2004). There was direct evidence pertaining to the burglary count in the form of eyewitness testimony from Ms. Haynes and the testimony of Nelson himself. Thus, the evidentiary principle relied upon by Nelson does not apply under the circumstances of this case.

[2] In a single footnote contained in his discussion of this enumeration of error, Nelson argues that the State made an improper remark during closing argument that pertained to whether he had the requisite intent to commit theft. Nelson did not object to the remarks at trial and consequently has failed to preserve this alleged error for appellate review. *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999).

"A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence . . . with the purpose of terrorizing another. . . . No person shall be convicted [of the offense] on the uncorroborated testimony of the party to whom the threat is communicated." OCGA § 16-11-37 (a). Here, the indictment accused Nelson of committing terroristic threats specifically by threatening to cause physical harm to Ms. Haynes. As such, the State was required to prove two essential elements: (1) that Nelson threatened Ms. Haynes with physical injury and (2) that he acted with the purpose of terrorizing her. *Martin v. State*, 219 Ga. App. 277, 283 (10) (464 SE2d 872) (1995).

Ms. Haynes testified that Nelson threatened to hurt and kill her several times during the course of the incident. If properly corroborated, this evidence was sufficient to prove both elements of the charged offense beyond a reasonable doubt. *Martin*, 219 Ga. App. at 283 (10). And, contrary to Nelson's assertion, the State sufficiently corroborated Ms. Haynes' testimony.[3] "[S]light circumstances may provide sufficient corroborating evidence. The quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged." (Punctuation omitted.) *Denson v. State*, 259 Ga. App. 342, 344 (1) (577 SE2d 29) (2003). See also *Moss v. State*, 148 Ga. App. 459, 460 (1) (251 SE2d 374) (1978).

The State presented evidence that Ms. Haynes was injured under her left eye during the incident.[4] We have held that evidence of wounds or other injuries caused to the victim can serve as sufficient corroborative evidence of the alleged threat. See *Scott v. State*, 225 Ga. App. 729, 732 (3) (484 SE2d 780) (1997). Additionally, the responding patrol officer and Ms. Haynes' daughter testified about her severely frightened state after the incident. "[C]orroboration can . . . consist of the victim's demeanor after the threat is communicated." *Smith v. State*, 273 Ga. App. 843, 844 (616 SE2d 183) (2005). See also *Martin*, 219 Ga. App. at 283 (10); *Sampson v. State*, 209 Ga. App. 213, 215 (1) (433 SE2d 136) (1993).[5]

---

[3] Nelson also contends that the State failed to prove beyond a reasonable doubt that he intended to terrorize Ms. Haynes because he presented an alternative hypothesis of innocence, namely, that he simply wanted to talk with Ms. Haynes and did not intend to terrorize her. Nelson's argument is unpersuasive for the same reasons discussed in Division 1 (a).

[4] Although Nelson contends that there was no evidence that the swollen area under Ms. Haynes' left eye was caused by him, Ms. Haynes testified that she believed the injury had been caused by Nelson when he was straddling her and they were struggling on the bed. The patrol officer who observed Ms. Haynes immediately after the incident also testified that the injury appeared "fresh."

[5] In his supplemental appellate brief, Nelson contends that evidence of Ms. Haynes' frightened state after the incident could not serve as sufficient corroboration of the alleged

"If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value." (Punctuation and footnote omitted.) *Denson*, 259 Ga. App. at 344 (1). See also *Moss*, 148 Ga. App. at 460 (1). Accordingly, Nelson cannot show that the verdict of guilty on the terroristic threats count was unsupportable as a matter of law.

2. In several enumerations of error, Nelson asserts that the trial court erred in its charges to the jury on the inference of an intent to commit theft and on terroristic threats, by allowing testimony concerning the long-term effects of the offenses on Ms. Haynes' mental state, and by allowing testimony in which the swollen area underneath Ms. Haynes' left eye was labeled as an "injury" or "wound." All of these claims of error have been waived on appeal.

Although the trial court asked whether there were any objections at the conclusion of the jury charges, Nelson did not object and did not reserve the right to object at a later time. Nelson also failed to object to the allegedly improper testimony during the course of the trial. Finally, Nelson never raised any of these claims of error in his new trial motion or at the hearing on the motion. Under these circumstances, Nelson has waived his right to appellate review of these claims and we decline to consider them. *Davis v. State*, 273 Ga. App. 397, 399 (1) (615 SE2d 203) (2005); *Edwards v. State*, 271 Ga. App. 415, 417 (2) (b) (609 SE2d 741) (2005); *Humphrey v. State*, 249 Ga. App. 805, 808 (2) (549 SE2d 144) (2001).

3. Nelson contends that the trial court erred by allowing Ms. Haynes to testify that Nelson "threatened" her, and by allowing the State to use the words "threats" and "threatened" to characterize Nelson's words and actions when questioning Ms. Haynes on direct examination. Nelson argues that characterizing Nelson's words in this way constituted the rendering of an improper legal conclusion or legal opinion. We are unpersuaded.

By describing Nelson's words as "threats," Ms. Haynes did no more than provide a factual description of what she heard and observed as an eyewitness, and the prosecutor merely reiterated in

---

terroristic threats under the circumstances of this case. In this regard, Nelson claims that Ms. Haynes specifically testified that she was frightened by the fact that he had broken into her home in the middle of the night, but not by his threats to kill or hurt her. However, when Ms. Haynes' testimony is read as a whole and in the light most favorable to the verdict, it is clear that her fright was caused at least in part by Nelson's threats:

STATE: Did he ever say anything else to you that scared you?

MS. HAYNES: He told me, said, I could kill you in this house and walk out, and said, nobody wouldn't never . . . know who killed you. He threatened me three or four times.

. . .

STATE: Were you afraid he was going to hurt you?

MS. HAYNES: Yes, I was.

his subsequent questioning the factual description provided by Haynes. Thus, no error was committed in allowing the testimony. See *Roberts v. State*, 272 Ga. 822, 826 (6) (537 SE2d 86) (2000) (testimony in which officer "was merely relating what he observed by use of his senses of sight and hearing" did not constitute impermissible opinion testimony); *Bland v. State*, 174 Ga. App. 584 (1) (330 SE2d 796) (1985) (testimony reflected officer's "personal observation" of fact and thus did not constitute the rendering of an impermissible legal conclusion). Additionally, Nelson has failed to show how the use of the words "threats" and "threatened" prejudiced him in any way, when there was already testimony in the record that he told Ms. Haynes he would hurt or kill her if she screamed or made him mad. See *Keanum v. State*, 212 Ga. App. 662, 663 (2) (442 SE2d 790) (1994) ("In order for an alleged error to be grounds for reversal, appellant must show not only error, but also ensuing harm.") (citation and punctuation omitted).

4. Nelson argues that the trial court erred by failing to merge the terroristic threats count into the burglary counts for sentencing purposes. "The key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge." (Citation and punctuation omitted.) *Morris v. State*, 274 Ga. App. 41, 43 (2) (616 SE2d 829) (2005). See also *Smith v. State*, 250 Ga. App. 465, 466 (1) (552 SE2d 468) (2001). Likewise, if the State has to establish different elements to find the defendant guilty for each of the offenses, there is no merger. *Morris*, 274 Ga. App. at 43 (2).

Here, the burglary offenses were completed when Nelson entered Ms. Haynes' home without permission and with the requisite intent. In contrast, the offense of terroristic threats was not completed until later, when Nelson actually threatened to hurt and kill Ms. Haynes. Furthermore, the offenses of burglary and terroristic threats do not have identical elements. Accordingly, the terroristic threats count did not merge with the burglary counts as a matter of fact or law. See *Morris*, 274 Ga. App. at 43 (2); *Bay v. State*, 266 Ga. App. 91, 92 (4) (596 SE2d 229) (2004); *Aufderheide v. State*, 144 Ga. App. 877, 878 (2) (242 SE2d 758) (1978).

5. Nelson contends that the trial court improperly sentenced him as a fourth-time felony offender under the repeat offender statute, OCGA § 17-10-7 (c). "The statute imposes maximum sentences for any person convicted of a felony who was previously convicted under the laws of any other state of a crime which if committed within this state would be a felony." (Punctuation and footnote omitted.) *Woodson v. State*, 242 Ga. App. 67, 70 (4) (530 SE2d 2) (2000). See OCGA § 17-10-7 (a). In turn, if the person has three such prior felony

convictions, upon a fourth felony conviction the person must serve the sentence without the possibility of parole. See OCGA § 17-10-7 (c). "The State bears the burden of showing that [any] foreign convictions were for conduct which would be considered felonious under the laws of this state. Failure to properly prove the prior convictions requires remand and resentencing." (Punctuation and footnotes omitted.) *Woodson*, 242 Ga. App. at 70 (4).

During the sentencing hearing, the State relied on several prior convictions of Nelson in order to support its position that Nelson should be sentenced as a fourth-time felony offender under OCGA § 17-10-7 (c). Based on these prior convictions, the trial court imposed consecutive maximum sentences without the possibility of parole on the counts of burglary with intent to commit theft and terroristic threats.

(a) Nelson first argues that the State failed to present sufficient proof of three prior felony convictions that would justify his receipt of maximum sentences without parole under OCGA § 17-10-7 (c). Nelson's argument is unavailing.

First, the State introduced certified documentary evidence reflecting Nelson's 1988 felony conviction in Georgia for burglary and terroristic threats. Nelson does not challenge the trial court's reliance on the 1988 felony conviction for sentencing purposes.

Second, the State introduced certified documentary evidence of Nelson's guilty plea and conviction in 1995 on two counts of burglary in the third degree under New York Penal Law § 140.20. Nelson argues that the trial court erred by relying on the 1995 New York conviction because the definition of burglary in the third degree under New York law is more expansive than the definition of burglary under Georgia law. Specifically, Nelson points out that under New York law, the unauthorized entry committed as part of a burglary in the third degree can be done with the intent to commit "a crime" — a felony *or a misdemeanor*. See N.Y. Penal Law § 140.20. In contrast, in Georgia there must be an intent to commit theft or some other felony in order to establish the crime of burglary. See OCGA § 16-7-1 (a). Thus, Nelson argues that conduct that would constitute a burglary in the third degree under New York law may not qualify as the felony of burglary under Georgia law.

While Nelson's argument is correct in the abstract, it is not true with regard to the 1995 New York conviction at issue here. The certified indictment introduced by the State shows that one of the burglary counts to which Nelson pled guilty was predicated on his unauthorized entry into a private residence where he stole currency, food stamps, and tokens. This conduct clearly would be a felony in Georgia — burglary with the intent to commit theft. See OCGA

§ 16-7-1 (a). As such, the trial court was authorized to rely on the prior 1995 New York conviction in sentencing Nelson.

Third, the State introduced certified documentary evidence reflecting Nelson's guilty plea and conviction in 1998 on the charge of assault in the third degree under New York Penal Law § 120.00 (1). Nelson argues that the trial court's reliance on his 1998 New York conviction was improper because the assault at issue would be a misdemeanor under Georgia law.

However, the certified felony complaint and supporting deposition introduced by the State shows that the assault in the third degree was based on Nelson striking a correctional officer following a pat-down frisk at a New York correctional facility that caused a laceration and bleeding near the officer's left eye. Nelson has failed to present any evidence rebutting these certified documents. It is clear that Nelson's conduct directed at the correctional officer would have constituted felony obstruction of a correctional officer under Georgia law. See OCGA § 16-10-24 (b). Thus, the trial court properly treated Nelson's New York conviction for assault in the third degree as a felony under Georgia law for sentencing purposes.

Accordingly, we conclude that the State met its statutory burden of proving that Nelson had at least three prior convictions for offenses that would constitute felonies under Georgia law.[6] It follows that the trial court was entitled to sentence Nelson as a fourth-time felony offender under OCGA § 17-10-7 (c).

(b) Nelson also argues that he should have been sentenced under the burglary recidivist statute, OCGA § 16-7-1 (b), rather than the repeat offender statute. We cannot agree. "The existence of prior felony convictions in addition to those for burglary removes the case from the exclusive provisions of OCGA § 16-7-1 (b) and allows for the application of the repeat offender statute for sentencing purposes." (Citation and punctuation omitted.) *State v. Chambers*, 275 Ga. App. 666, 667 (621 SE2d 588) (2005).

6. In his final two enumerations of error, Nelson alleges that he received ineffective assistance from his trial counsel on several grounds. Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), success on an ineffective assistance of counsel claim requires a two-prong showing:

> [A] criminal defendant must show that counsel's performance was deficient and that the deficient performance so

---

[6] For this reason, we need not address whether the other prior convictions introduced by the State at the sentencing hearing involved felonies under Georgia law.

prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.

(Citations omitted.) *Robinson v. State*, 278 Ga. 31, 34 (3) (597 SE2d 386) (2004).

(a) Nelson argues that given the factual circumstances of this case, his trial counsel should have been alerted to the possibility of a mental illness defense and, therefore, should have had a mental evaluation conducted. Nelson contends that if such an evaluation had been performed, a psychologist likely would have found that he was incompetent at the time of the incident, a finding that he alleges could have been presented at trial to negate criminal intent and as a mitigating factor at sentencing. We reject Nelson's contention.

Nelson cannot establish either prong of the *Strickland* test. At the new trial hearing, Nelson's trial counsel testified that "there was nothing to indicate to [her] that he was mentally ill at all" and that he seemed "absolutely lucid" during their discussions of the case. Trial counsel further related that Nelson "assisted . . . actively" in his defense, including writing her letters and telling her "his version of events and what the facts were on his side." Trial counsel testified that based on her discussions "at length" with Nelson, she had concluded that he had a defense to the factual allegations, but that it did not have "anything to do with his psychological" state. Rather, she surmised that Nelson's best defense would be based on the argument that he had committed only the lesser offense of criminal trespass because he lacked the requisite intent. Given this testimony, trial counsel's decision to seek and obtain a jury charge on criminal trespass but not to request a mental evaluation was "a reasonable tactical decision a competent attorney would have made under the circumstances." *Cormier v. State*, 277 Ga. 607, 608 (2) (a) (592 SE2d 841) (2004). Therefore, Nelson cannot show that his trial counsel's performance was deficient.

Significantly, Nelson did not present any expert testimony concerning his mental condition or evidence of the results of a mental evaluation during the new trial hearing. As such, Nelson failed to show that he had been mentally ill or that a mental evaluation would have made any difference in the proceedings. *Cormier*, 277 Ga. at 608-609 (2) (b). See also *Harris v. State*, 279 Ga. 304, 307 (c) (612 SE2d 789) (2005). Moreover, Nelson testified at trial to his troubled emotional state at the time of the incident, and trial counsel called attention to Nelson's testimony about his "emotional difficulties" at sentencing. Hence, even assuming that his trial counsel was deficient, Nelson cannot establish prejudice.

(b) Nelson contends that his trial counsel was constitutionally ineffective by failing to object or reserve her right to object to several jury charges; failing to object to testimony concerning the long-term effects of the alleged crimes on Ms. Haynes' mental state; failing to object to testimony in which the swollen area underneath Ms. Haynes' left eye was labeled as an "injury" or "wound"; and failing to properly impeach Ms. Haynes during cross-examination. Even though new counsel had been appointed to represent him, Nelson failed to raise these contentions of ineffectiveness in his motion for new trial or during the hearing held on the motion. These "contentions of ineffectiveness not raised on motion for new trial by counsel appointed to represent [Nelson] after conviction are waived." *Spear v. State*, 270 Ga. 628, 632 (5) (513 SE2d 489) (1999). See also *Cody v. State*, 275 Ga. App. 140, 141-142 (3) (619 SE2d 811) (2005); *Womack v. State*, 273 Ga. App. 300, 307 (4) (614 SE2d 909) (2005).

(c) Finally, Nelson makes several allegations of ineffective assistance that are predicated on enumerations of error that we resolved substantively in previous divisions of this opinion. Because those enumerations were meritless, "they provide no basis for reversal under the guise of 'ineffective assistance of counsel.' " *Holder v. State*, 242 Ga. App. 479, 484 (8), n. 2 (529 SE2d 907) (2000).

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED DECEMBER 6, 2005 —
RECONSIDERATION DENIED DECEMBER 21, 2005.

*Axam & Adams, Tony L. Axam*, for appellant.
*Steven Askew, District Attorney, Samuel H. Altman, Assistant District Attorney*, for appellee.